**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MARIE BUTLER,

       Plaintiff,

                                  CASE NO.: 8:19-cv-2771-T-30TGW

v.

BOB GUALTIERI, as Sheriff of Pinellas
County, in his official capacity; and
AMY GEE, in her individual capacity,

       Defendants.

_____

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

       COMES NOW, Marie Butler, by and through her undersigned counsel, and hereby sues

the defendants, Bob Gualtieri, in his official capacity as Sheriff of Pinellas County, Florida, and

Amy Gee, Pinellas County Sheriff's Deputy, in her individual capacity.

## INTRODUCTION

       1.     This is an action brought by a United States citizen, Marie Butler, who on January

8, 2019 was arrested for a second-degree misdemeanor, the least serious category of criminal

offense under Florida law.  The State Attorney's Office declined to prosecute her. Nonetheless,

soon after her arrival at the Pinellas County Jail and while remaining handcuffed behind her

back, Ms. Butler was subjected to an unreasonable use of force by a detention deputy, defendant

Amy Gee, who inflicted a physical takedown of Ms. Butler. As a result of this handcuffed

takedown, Ms. Butler suffered a complete fracture of her upper arm.

       2.     Ms. Butler alleges that defendant Gee, employed by defendant Bob Gualtieri and

acting within the course and scope of her employment, committed the state law torts of battery

and negligence. As required by Florida law, specifically § 768.28(9)(a), *Fla. Stat.* (2019), defendant Gualtieri is named in his official capacity as the defendant in Ms. Butler's battery and negligence claims.   Plaintiff also alleges that defendant Gee violated Ms. Butler's Fourth Amendment right, and alternatively her Fourteenth Amendment right, to be free from the use of unreasonable force. Finally, defendant Gualtieri is named in his official capacity in a claim that his failure to train detention deputies to recognize the limited circumstances in which a handcuffed takedown may be constitutionally inflicted on non-resisting citizens in custody, was the moving force in the violation of Ms. Butler's constitutional rights, and rises to the level of an official government policy, custom or usage under 42 U.S.C. §1983.

3.     This action arises under Florida common law and the Constitution and laws of the United States. This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 & 1343, and jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. § 1367.

4.     All incidents material to this action occurred in Pinellas County, Florida, and defendant Gualtieri is a state constitutional officer serving Pinellas County, Florida. Venue is thus appropriate in this Court pursuant to Local Rule 1.02(b)(4).

5.     Plaintiff seeks declaratory and compensatory relief and standard costs, and additionally on the federal civil rights claims asserted in Counts III, IV, and V, attorneys' fees, expert witness fees, and statutory costs pursuant to 42 U.S.C. § 1988.

## PARTIES

6.     Plaintiff Marie Butler is an adult United States citizen and is a resident of the State of Florida and of Pinellas County.

7.     Defendant Bob Gualtieri is the Sheriff of Pinellas County, Florida, and is sued in his official capacity on the supplemental state law claims of battery and negligence. He is also

sued in his official capacity on the federal constitutional claims because his failure to train

deputies rises to the level of an official government policy, custom, or usage of his agency and

caused Ms. Butler's federal constitutional rights to be violated.

8.     Defendant Amy Gee was, at all relevant times, a detention deputy employed with

the Pinellas County Sheriff, Bob Gualtieri, and is sued in her individual capacity for violating

Ms. Butler's federal constitutional rights.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

9.      Plaintiff timely provided notice of her state common law claims against

defendant Gualtieri, in his official capacity, pursuant to § 768.28(6), *Fla. Stat.* (2019), and

provided the requisite amount of time to resolve those claims. Therefore, all administrative

preconditions have been satisfied. There are no administrative preconditions applicable to

plaintiff's federal civil rights claims against the defendants.

## FACTUAL ALLEGATIONS

10.     On January 8, 2019, at approximately 9:00 p.m., Marie Butler was arrested in

Largo, Florida for the misdemeanor offense of disorderly intoxication, a second-degree

misdemeanor, although law enforcement officials originally intended to subject Ms. Butler to

temporary civil commitment pursuant to Florida's Marchman Act. On February 18, 2019, the

Pinellas County State Attorney's Office filed a Notice of "No Information," reflecting the

decision not to prosecute Ms. Butler for the alleged second-degree misdemeanor.

11.     Ms. Butler was arrested at her home by Pinellas County Sheriff's Deputy

Matthew Schultheis.  Deputy Schultheis's subsequent arrest affidavit requested a low bond for

Ms. Butler, reflecting his desire for Ms. Butler's prompt release from jail.  Deputy Schultheis

secured his handcuffs to Ms. Butler's wrists and behind her back, and transported her to the Pinellas County Jail.

12.     Once Ms. Butler arrived at the jail, Pinellas County Sheriff's detention deputies, including defendant Gee, assumed responsibility for her custody and care, although Deputy Schultheis also maintained his custody of Ms. Butler during all relevant times, and personally accompanied her during the events described below.

13.     Ms. Butler arrived at the jail at approximately 9:40 p.m., and was escorted to the booking area of the jail.  Both of her arms remained restrained behind her back, and were secured by Deputy Schultheis's handcuffs firmly affixed to both wrists. Ms. Butler remained handcuffed in this manner at all subsequent, relevant times.

14.     Video images of Ms. Butler's presence at the booking counter of the jail, and the relevant events that followed, were captured on multiple videotapes.  Video cameras were located in a position above the booking counter and at various other locations in the booking area of the Pinellas County Jail.

15.     Defendant Gee assumed, with Deputy Schultheis, custody of Ms. Butler, as is customary for defendant Gee in the course and scope of her employment.   Defendant Gee and Ms. Butler approached the booking counter, with defendant Gee located next to Ms. Butler, on her right side. With the handcuffs still restraining Ms. Butler's hands behind her back, defendant Gee maintained a firm grip with her left hand on Ms. Butler's upper right arm.

16.     In addition, at least four other detention deputies were present within ten feet of Ms. Butler, and an additional detention deputy was present, but separated from Ms. Butler by the booking counter. The arresting officer, Deputy Schultheis, was also located within arms-reach of, and directly behind, Ms. Butler as she stood at the booking counter.

17.     The booking process commenced, but did not conclude, in reference to the misdemeanor disorderly intoxication charge. At this point, Ms. Butler's custodial status was an arrestee on the second-degree misdemeanor charge, as the booking process had not concluded and Deputy Schultheis maintained custody of Ms. Butler, who remained restrained with his handcuffs.  Alternatively, Ms. Butler's custodial status was a pretrial detainee on the second-degree misdemeanor charge.

18.     While standing at the booking counter with her arms still restrained behind her back by the handcuffs, Ms. Butler ever so slightly lost her sense of balance. She swayed very slowly, and slightly to her left.  Defendant Gee pulled Ms. Butler back toward her, throwing Ms. Butler even more off balance. Trying to recover her balance, Ms. Butler again swayed to her left. Ms. Butler did not physically resist defendant Gee at any time.

19.     Defendant Gee nonetheless reached toward Ms. Butler's upper chest with her right hand, inadvertently placing it on Ms. Butler's neck, while still maintaining, with her left hand, her grip on Ms. Butler's upper right arm. Defendant Gee then extended her right leg and foot to a position on the floor immediately behind Ms. Butler.

20.     Defendant Gee then physically rotated Ms. Butler's body in a counter-clockwise direction. Defendant Gee pushed Ms. Butler backward, while tripping her from behind.

21.     Facing forward, but tripped from behind, Ms. Butler could not in any way brace herself for the fall.

22.     Centrifugal force accelerated the rate of the movement of Ms. Butler as she passed across defendant Gee's body and toward the concrete floor.

23.     Because she was handcuffed securely behind her back, Ms. Butler was wholly unable to prepare herself or otherwise reduce the impact caused by this physical takedown. Ms.

Butler struck the concrete floor, with her left upper arm sustaining the brunt of the impact. Once she struck the floor, Ms. Butler remained motionless and prone. She continued to offer no physical resistance to any deputy.

24.    The impact completely fractured Ms. Butler's upper left arm. The sound of the break was audible, and she cried out in pain. Nonetheless, defendant Gee, without using due care, lifted Ms. Butler up off the concrete floor by her injured upper left arm, subjecting her to additional, excruciating pain.

25.    Soon thereafter, Ms. Butler was transported by the Pinellas County Sheriff's Office to Northside Hospital in St. Petersburg, and she was admitted.  There, the emergency room physician diagnosed a completely fractured humerus bone.

26.    As a result of this use of unreasonable force, Ms. Butler also suffered, and continues to suffer, mental and emotional distress, humiliation, pain and suffering, and other economic and non-economic losses.

27.    None of the numerous detention deputies and supervisors who witnessed defendant Gee's use of force initiated any complaint or investigation into whether her use of force was unreasonable or otherwise improper, or otherwise expressed any concern about defendant Gee's actions. Without exception, all of these eyewitnesses, all of whom are employed as sworn members of the Pinellas County Sheriff's Office, expressed their beliefs, under oath, that defendant Gee's use of force was reasonable.

28. None of the sworn law enforcement officers personally witnessing defendant Gee's handcuffed takedown of Ms. Butler initiated a complaint or investigation with the Pinellas County Sheriff's Office. Following a complaint initiated by Ms. Butler's husband, however, the Pinellas County Sheriff's Office, Administrative Investigation Division, Professional Standards

Bureau conducted an investigation of defendant Gee's use of force on Ms. Butler. A number of eyewitnesses present in the booking area of the jail at the time of Ms. Butler's handcuffed takedown, including the multiple detention deputies and supervisors present at the scene, were interviewed under oath as part of that investigation. The investigation produced more than 600 pages of sworn witness testimony. Unless described otherwise, the witness statements appearing below originate in the transcripts of this sworn testimony, at the page numbers so designated.

29.  Lieutenant Sheila Christian was the ranking supervisor on duty in the booking area at the time of the incident. She has been employed by the Pinellas County Sheriff's Office for over 29 years. Christian Transcript, p. 46.   Defendant Gee, Lieutenant Christian testified, "redirected" Ms. Butler to the floor in a controlled manner. *Id.* at 30-31. Lieutenant Christian testified that defendant Gee unintentionally contacted Ms. Butler' neck area with her right arm. *Id.* at 33. Based on her examination of the videos, Lieutenant Christian testified, the force used by defendant Gee was "reasonable and necessary."  *Id.* at 34. According to Lieutenant Christian's supplemental Department of Detention and Corrections (DDC) report, defendant Gee's handcuffed takedown of Ms. Butler "did not appear to be malicious in nature."

30. Sergeant John Squillante testified that defendant Gee routinely deescalates confrontations with detainees, Squillante Transcript, p. 53, and had a shocked demeanor after this, her first use of force. *Id*. at 27. He testified that defendant's Gee's takedown was "simple," not "aggressive."  *Id.* at 24. Defendant Gee inadvertently grabbed Ms. Butler's neck, and let go when Ms. Butler was still half-way down to the floor. *Id.* at 44-45. According to his supplemental Department of Detention and Corrections (DDC) report, Sgt. Squillante agreed with the type and amount of force defendant Gee used.

31. Sergeant Bronson Taylor testified that it appeared that the momentary placement of defendant Gee's hand on Ms. Butler's throat was inadvertent. Taylor Transcript, p. 26.

32. Corporal Shawn Fox testified that defendant Gee was extremely calm and professional during the incident and that after the takedown, defendant Gee was not angry or upset. Fox Transcript, p. 11-12.

33. Corporal Michael Andrews testified that defendant Gee's demeanor was normal and calm. Andrews Transcript, p. 11. Immediately after the takedown, she was still calm, instructing Ms. Butler to relax and calm down. *Id.* Corporal Andrews stated that he did not think defendant Gee's grab of Ms. Butler's neck was malicious. *Id.* at 16.

34. The arresting officer, Deputy Schulteis, testified that he was present only one to one and one-half feet behind Ms. Butler at the time of the use of force. Schultheis Transcript, p. 31. He testified that defendant Gee's takedown was not noteworthy, and it did not appear to be "anything out of the ordinary of a normal use of force." *Id.* at 22. The takedown was "normal," Deputy Schultheis testified. *Id.* at 39.

35. Deputy Kristen Paul testified that defendant Gee seemed upset after the takedown and concerned that Ms. Butler was potentially injured. Paul Transcript, p. 16-17.

36. Defendant Gee testified that she made inadvertent contact with Ms. Butler's neck while reaching toward her upper chest to perform the takedown. Gee Transcript, p. 27. When first questioned by Pinellas County Sheriff's Office Internal Affairs investigators on March 14, 2019, defendant Gee testified that her actions were "necessary." *Id.* at 64. She also testified that she had never been trained on a takedown for a handcuffed inmate. *Id.* at 62-63. By the time of her April 3, 2019 interview with the Pinellas County Sheriff's Office Administrative Review Board, however, she acknowledged that her actions were not reasonable.

37.     The Pinellas County Sheriff's Office concluded that defendant Gee violated Pinellas County Sheriff's Office General Order 3-1.1, Rule and Regulation 5.15, "Custody of Arrestees/Prisoners," which provides in its entirety, "Arrestees/prisoners shall be kept secured and treated humanely and shall not be subjected to physical abuse. The use of physical force shall be restricted to circumstances specified by law when necessary to accomplish a police task." Sheriff Gualtieri terminated defendant Gee's employment on April 5, 2019.

## COUNT I

**(Supplemental State Law Battery Claim Against
Defendant Bob Gualtieri, in his Official Capacity)**

Plaintiff sues defendant Gualtieri in his official capacity and states:

38.     All factual allegations of paragraphs 10 through 37 are realleged in full and adopted herein.

39.     Defendant Gee committed the state law tort of battery against Marie Butler, which is actionable against Bob Gualtieri, Sheriff of Pinellas County, in his official capacity, pursuant to § 768.28(9)(a), *Fla. Stat*. (2019).  Defendant Gee intentionally and harmfully touched Ms. Butler without her consent, and with no legal or justifiable reason. By inflicting a handcuffed takedown and harmfully applying an amount of force that was unreasonable and excessive under the circumstances, defendant Gee committed the Florida common law tort of battery while acting within the course and scope of her employment by defendant Gualtieri.

40.     As a result of the battery of plaintiff, she suffered the losses described above in paragraphs 25 and 26.

## COUNT II

### (Supplemental State Law Negligence Claim Against
### Defendant Bob Gualtieri, in his Official Capacity)

Plaintiff sues defendant Gualtieri in his official capacity and states:

41.     All factual allegations of paragraphs 10 through 37 are realleged in full and adopted herein.

42.     In addition to, and at the conclusion of, the battery asserted in Count I, defendant Gee also committed the state law tort of negligence against Marie Butler, which is actionable against Bob Gualtieri, Sheriff of Pinellas County, in his official capacity, pursuant to § 768.28(9), *Fla. Stat.* (2019). After committing the state law tort of battery by harmfully applying a takedown and an amount of force that was unreasonable and excessive under the circumstances, and while Ms. Butler remained prone on the jail's floor, defendant Gee then negligently lifted Ms. Butler up to her feet by her injured arm. Lifting Ms. Butler up by her injured arm after the battery had concluded exacerbated Ms. Butler's injury, causing additional and unnecessary pain.

43.     Defendant Gee had a duty to provide reasonable care and custody to arrestees and detainees, including Ms. Butler, which she breached by picking Ms. Butler up by her injured arm and causing additional damage to Ms. Butler.

44.     As a result of this negligence, Ms. Butler also suffered the losses described above in paragraphs 25 and 26.

## COUNT III

**(42 U.S.C. § 1983 Unreasonable Force Claim in Violation of the Fourth Amendment Against Defendant Amy Gee, in her Individual Capacity)**

Plaintiff sues defendant Amy Gee in her individual capacity and states:

45.     All allegations of paragraphs 10 through 37 are realleged in full and adopted herein.

46.     Defendant Gee, while exercising her discretionary authority, violated Ms. Butler's clearly established Fourth Amendment right to be free from the infliction of unreasonable force on an arrestee by applying a handcuffed takedown when Ms. Butler was not resisting.

47.     At the time that defendant Gee applied the unreasonable handcuffed takedown of Ms. Butler, Ms. Butler had not yet been fully booked into the Pinellas County Jail. Therefore, at the time of the handcuffed takedown, the nature of Ms. Butler's custodial status was an arrestee on a misdemeanor disorderly intoxication charge. The arresting deputy escorted Ms. Butler into the booking area of the jail and retained custody of Ms. Butler at all relevant times. His handcuffs remained on Ms. Butler's wrists throughout the use of unreasonable force by defendant Gee.

48.     The lack of resistance by Ms. Butler, the severity of her injury, the nonexistent threats to any deputy, and the wholly disproportionate relationship between the force used and the force needed, reflects the use of objectively unreasonable force by defendant Gee, which violates Ms. Butler's clearly established Fourth Amendment right to be free from an unreasonable seizure, and is actionable pursuant to 42 U.S.C. § 1983.

49.     As a result of the violation of her Fourth Amendment right to be free from the use of unreasonable force as a misdemeanor arrestee, Ms. Butler suffered the losses described above in paragraphs 25 and 26.

## COUNT IV

**(42 U.S.C. § 1983 Unreasonable Force Claim in Violation of the Fourteenth Amendment Against Defendant Amy Gee, in her Individual Capacity)**

Plaintiff sues defendant Amy Gee in her individual capacity and states:

50.     All allegations of paragraphs 10 through 37 are realleged in full and adopted herein.

51.     Alternative to Count III, defendant Gee, while exercising her discretionary authority, violated Ms. Butler's clearly established Fourteenth Amendment right to be free from unreasonable force by applying a handcuffed takedown when Ms. Butler was not resisting. At the time Ms. Butler was subjected to unreasonable force, she was a pretrial detainee within defendant Gee's custody and control.

52.     The lack of resistance by Ms. Butler, the severity of her injury, the nonexistent threats to any deputy, and the wholly disproportionate relationship between the force used and the force needed makes this handcuffed takedown an infliction of objectively unreasonable force by defendant Gee, which violates Ms. Butler's clearly established Fourteenth Amendment right to be free from unreasonable force and is actionable pursuant to 42 U.S.C. § 1983.

53.     As a result of the violation of her Fourteenth Amendment right to be free from the use of unreasonable force as a pretrial detainee, Ms. Butler suffered the losses described above in paragraphs 25 and 26.

## COUNT V

**(42 U.S.C. § 1983 Unreasonable Force Claim in Violation of the Fourth Amendment or, in the Alternative, Fourteenth Amendment, against Defendant Bob Gualtieri, in his Official Capacity)**

Plaintiff sues defendant Gualtieri in his official capacity and states:

54.     All allegations of paragraphs 10 thru 37 are realleged in full and adopted herein.

55.     Defendant Gualtieri's failure to train detention deputies to recognize the limited circumstances in which a handcuffed takedown may be constitutionally inflicted on non-resisting citizens in custody, caused the violation of Ms. Butler's clearly established Fourth, or alternatively Fourteenth, Amendment right to be free from unreasonable force, and rises to the level of an official government policy, custom or usage, thus subjecting defendant Gualtieri, in his official capacity, to liability under 42 U.S.C. 1983 for Ms. Butler's damages.

56.     During the Pinellas County Sheriff's Office Professional Standards Bureau's investigation, following a complaint by her husband, of the use of force against Ms. Butler, Deputy Schulteis, Corporal Fox, Lieutenant Christian, Corporal Andrews, Sergeant Squillante, and defendant Gee (at least initially), among others, all testified under oath that they believed her handcuffed takedown of Ms. Butler was reasonable or necessary. Yet, defendant Gualtieri terminated defendant Gee's employment on the basis that she violated his use of force policy by applying unreasonable force. The fact that no detention deputy or supervisor witnessing defendant Gee's use of force believed it was unreasonable, despite defendant Gualtieri's contrary conclusion that the use of force was in fact, unreasonable, demonstrates that the absence of adequate training for such officers was the cause of the violation of Ms. Butler's constitutional rights and the damages she suffered.

57.     For example, Deputy Paul testified that it would "definitely" make a difference for a takedown if the detainee was handcuffed in the back. Paul Transcript, p. 14.

58.     Sergeant Taylor testified that in his takedown training there was no differentiation between a takedown for a non-handcuffed detainee and a handcuffed detainee. Taylor Transcript, p. 16.

59.     Lieutenant Christian testified that, "Every time we've done training its always been un-handcuffed." Christian Transcript, p. 46.

60.     Also, while testifying under oath during the Professional Standards Bureau's investigation, defendant Gee, Deputy Brandon Burgess, Corporal Fox, Corporal Andrews, Lieutenant Christian and Sergeant Taylor all testified that they had either not been trained on how or when to do a takedown on a handcuffed arrestee or detainee, or had been only trained in takedowns in general, with no distinction in training for a handcuffed versus a non-handcuffed detainee. Their testimony is direct evidence of a lack of adequate training for the deputies and officers on the specific matter of performing a common use of force technique, a takedown, particularly on a handcuffed arrestee or detainee.

61.     Because defendant Gee was not adequately trained as to the circumstances in which a handcuffed takedown may be used on a non-resisting citizen in custody, she committed an unreasonable, harmful takedown of Ms. Butler in violation of Ms. Butler's Fourth Amendment and, alternatively, Fourteenth Amendment right to be free of unreasonable force.

62.     Defendant Gualtieri knew that there have been repeated violations by Pinellas County Sheriff Office deputies of citizens' constitutional rights to be free from unreasonable force, as demonstrated by a pattern of incidents in which handcuffed, non-resisting persons in custody were injured during takedowns, necessitating hospital care. These incidents, all

occurring within two years of the violation of Ms. Butler's constitutional rights, are materially similar constitutional violations to the ones Ms. Butler endured, details of which are listed below:

     A.    On March 19, 2017, a female in custody was brought into the Pinellas County Jail's intake-receiving area under the Marchman Act. The arrestee was handcuffed behind her back, but was still subjected to a takedown by a Pinellas County Sheriff deputy. This use of force resulted in emergency 911 being activated and the victim being transported to Northside Hospital for medical treatment.

     B.    On September 30, 2017, another female in custody was brought into the Pinellas County Jail's intake-receiving area under the Marchman Act. The citizen was handcuffed, but she too was subjected to a takedown by a Pinellas County Sheriff's corporal. This handcuffed takedown resulted in injuries to the citizen's face, and she was taken to Northside Hospital for medical treatment.

     C.    On December 22, 2018, a male in custody was brought into the Pinellas County Jail's intake-receiving area on a charge of criminal mischief. After being taken to a cell, and while still handcuffed behind his back, the citizen was subjected to a handcuffed takedown by a Pinellas County deputy. This use of force resulted in injuries to the citizen's face, and he was taken to Northside Hospital for medical treatment.

     63.    On July 13, 2019, defendant Gualtieri publicly addressed a series of incidents occurring in January, 2019 in which detention deputies were found to have mistreated pretrial detainees, and of which Ms. Butler's incident was included. Defendant Gualtieri stated that, as a result of these incidents, no jail policies or procedures, which he described as "solid," would be changed. Defendant Gualtieri reportedly stated, "We have the procedural safeguards in place…You can't address stupid. This is just stupid."

15

64.     Defendant Gualtieri knew that, based on the incidents listed in paragraph 62, which were all instances of unconstitutional conduct materially similar to defendant Gee's violation of Ms. Butler's constitutional rights, additional training was needed to avoid Fourth and, in the alternative, Fourteenth Amendment violations likely recurring in the future. However, defendant Gualtieri, as evidenced in the statements described in paragraph 63, made a deliberate choice not to provide additional training to his detention deputies, including defendant Gee.

65.     The incidents listed in paragraph 62 show a pattern of materially similar constitutional violations as Ms. Butler endured, and coupled with defendant Gualtieri's deliberate indifference to constitutional violations likely recurring in the future, demonstrates his conscious disregard for the violation of citizens' constitutional rights by his deputies of the Pinellas County Sheriff's Office.

66.     The lack of resistance by Ms. Butler, the severity of her injury, the nonexistent threats to any deputy, and the wholly disproportionate relationship between the force used and the force needed makes this an infliction of objectively unreasonable force by defendant Gee, which violates Ms. Butler's clearly established Fourth and, in the alternative, Fourteenth Amendment right to be free from excessive, and thus unreasonable, force, and is actionable pursuant to 42 U.S.C. § 1983.

67.     As a result of the lack of adequate training for deputies in the Pinellas County Sheriff's Office, including defendant Gee, and the conscious disregard and deliberate indifference of such violations, plaintiff Marie Butler's Fourth Amendment, or in the alternative, Fourteenth Amendment right to be free from excessive force was violated, causing the losses described above in paragraphs 25 and 26.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Marie Butler prays that this Court will enter relief in the

following terms:

1.      A judgment for declaratory and compensatory relief on all Counts;

2.      An award of costs, expert witness fees, and attorneys' fees pursuant to 42 U.S.C.

§ 1988 on Counts III, IV, and V;

3.      An award of standard costs on all Counts; and

4.      Such other relief as the Court deems just and proper.

Finally, plaintiff requests a trial by jury.


HOOVER LAW, P.L.L.C.

*/s/ Todd Hoover*
Todd Hoover, Esq.
Fla. Bar No. 125030
740 Lakeview Drive
Palm Harbor, FL 34683-2907
(727) 458-4327
thoover@law.stetson.edu

&

FARMER & FITZGERALD, P.A.

*/s/ Matthew Farmer*
Matthew Farmer, Esq.
Fla. Bar No. 0793469
400 N. Tampa St., Suite 950
Tampa, FL  33602
(813) 228-0095
FAX (813) 224-0269
MattFarmer1@aol.com


TRIAL COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served electronically on this 23rd day of December, 2019, on Anne F. McDonough, Esq. at:

amcdonough@pcsonet.com

_/s/ Matthew Farmer_
Matthew Farmer