UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIE BUTLER,

    Plaintiff,

v.                                                          Case No. 8:19-cv-2771-TPB-TGW

BOB GUALTIERI, in his official
capacity as Sheriff of Pinellas
County, and AMY GEE,
in her individual capacity,

    Defendants.
_____/

## **ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on "Defendant's, Bob Gualtieri, as Sheriff of Pinellas County, in his Official Capacity, Motion for Final Summary Judgment" (Doc. 97), filed on January 29, 2021, and on "Plaintiff's Motion for Summary Judgment on Count One of Her Second Amended Complaint," filed on February 1, 2021 (Doc. 101). The parties responded in opposition (Docs. 108; 111) and filed replies (Docs. 118; 119). On April 7, 2021, and April 14, 2021, the Court held a bifurcated hearing to address the summary judgment motions. Following the hearing, the parties were permitted to submit written closing arguments. (Docs. 124; 125). After reviewing the motions, responses, replies, evidence, legal arguments, court file, and the record, the Court finds as follows:

## Background

On January 8, 2019, Plaintiff Marie Butler was arrested for disorderly intoxication, a second-degree misdemeanor, and was taken to the Pinellas County Jail. While at booking, Plaintiff was injured when Amy Gee, a deputy at the Pinellas County Sheriff's Office ("PCSO") at that time, performed a takedown on her. During the takedown, Plaintiff, who was handcuffed behind her back, broke her left arm. Gee then pulled Plaintiff to her feet by grabbing Plaintiff's broken arm. Plaintiff's husband filed a complaint against Gee with the PCSO Administrative Investigation Division. The PCSO ultimately determined that Gee's use of force was not reasonable, and Gee's employment was terminated on April 5, 2019.

Plaintiff now sues Bob Gualtieri, in his official capacity as Sheriff of Pinellas County, for battery and negligence based on vicarious liability, and for *Monell* liability under 42 U.S.C. § 1983. She has moved for summary judgment on Count One, a supplemental state law battery claim, arguing that no reasonable jury could find (1) that a battery did not occur, and (2) that Deputy Amy Gee acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The Sheriff has moved for summary judgment on Count One, arguing that no reasonable jury could find (1) that a battery did not occur, and (2) that Deputy Amy Gee did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The Sheriff also has moved for summary

judgment on Count Five, Plaintiff's *Monell* claim, arguing that Plaintiff has failed to and cannot establish that the Sheriff had notice of any pattern of similar constitutional violations.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court

must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

### *Count I – State Law Battery Claim Against Sheriff*

Plaintiff and the Sheriff both seek summary judgment on Plaintiff's state law battery claim in Count I. To plead and prove a battery claim, a plaintiff must establish that the defendant engaged in "the intentional infliction of a harmful or offensive contact upon the person of another." *Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1322 (S.D. Fla. 2012). In the context of a battery claim against a law enforcement officer, because officers possess a presumption of good faith in Florida, an officer is only liable for battery if he or she uses excessive force. *Id.* When analyzing this type of claim, the court focuses on "whether the amount of force used was reasonable under the circumstances." *Id.* at 1323.

In this case, the facts are largely undisputed. Indeed, both parties agree that Gee's use of force was "unnecessary, unreasonable, excessive, without just cause, intentional, and without provocation." Plaintiff has presented sufficient record evidence to prove that a battery occurred, and the Sheriff concedes that the amount

of force used against Plaintiff was unreasonable. However, the parties contest whether sovereign immunity precludes Plaintiff's battery claim.

"Both federal and Florida law demonstrate that a Florida municipality retains immunity for acts or omissions of its employees that are committed in 'bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Bussey-Morice v. Kennedy*, No. 6:11-cv-970-Orl-36GJK, 2013 WL 71803, at *2 (M.D. Fla. Jan. 7, 2013) (quoting § 768.28(9)(a), *F.S.*). When considering the application of sovereign immunity here, the Court examines whether a reasonable jury could find that Gee was acting in bad faith, with malicious purpose, or in a manner exhibiting wanton or willful disregard of human rights, safety or property at the time she used force against Plaintiff.[1]

After careful review of the record and case law, the Court concludes that there is a genuine issue of material fact as to whether Gee's conduct crossed this threshold when Gee performed a takedown on Plaintiff, broke her arm, and then pulled her to her feet using her broken arm. *See, e.g.*, *Haberski v. Bufano*, 728 F. App'x 903, 909-10 (11th Cir. 2018) (affirming denial of defense summary judgment motion after concluding that the facts – when viewed in light most favorable to the plaintiff as the nonmoving party – demonstrated that the degree of force used by

---

[1] Plaintiff argues that no reasonable jury could find that Gee was acting in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property. The Sheriff, on the other hand, contends that no reasonable jury could find that Gee was not acting in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Ultimately, if a jury found that Gee was acting in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the Sheriff would be entitled to sovereign immunity and would prevail on his fifth affirmative defense.

officer was unreasonable and sufficiently evidenced that officer acted with wanton and willful disregard of human rights); *Smith-Grimes v. City of West Palm Beach*, No. 11-81201-CIV, 2013 WL 594018, at *4 n.2 (S.D. Fla. Feb. 14, 2013) (explaining that issue of whether officers' conduct constituted wanton and willful disregard of human rights that would allow the city immunity is a question of fact for the jury); *Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1226 (M.D. Fla. 2011) (unreasonableness of search could support a jury finding of willful and wanton conduct on the part of the officer); *McGhee v. Volusia County*, 679 So. 2d 729, 733 (Fla. 1996) (explaining that sheriff is only immune in very limited circumstances, and concluding that issue of whether deputy acted in bad faith, with malicious purpose, or in manner exhibiting wanton or willful disregard of human rights, safety, or property when he kicked handcuffed plaintiff presented question of fact for the jury). Consequently, the cross motions for summary judgment on this claim are denied.

### *Count V – Monell Claim Against Sheriff*

In Count V, Plaintiff asserts a § 1983 claim against the Sheriff, in his official capacity, alleging that the Sheriff failed to train deputies on the use of force that may be constitutionally inflicted on handcuffed detainees or arrestees. The Sheriff moves for summary judgment on the *Monell* claim, arguing that Plaintiff has failed to and cannot establish that the Sheriff had notice of any pattern of similar constitutional violations.

Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Municipalities can only be held liable, however, where "action pursuant to official municipal policy of some nature caused a constitutional tort;" it cannot be liable under § 1983 on a *respondeat superior* theory because it employs a tortfeasor. *Id.* at 691. "Supervisor liability arises only 'when the supervisor personally participates in the allege constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'" *Gross v. Jones*, No. 3:18-cv-594-J-39PDB, 2018 WL 2416236, at *4 (M.D. Fla. May 29, 2018) (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007)). Consequently, "to impose § 1983 liability on a local government body, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Scott v. Miami-Dade Cty.*, No. 13-CIV-23013-GAYLES, 2016 WL 9446132, at *3 (S.D. Fla. Dec. 13, 2016).

To demonstrate a policy or custom, "it is generally necessary to show a persistent and wide-spread practice; random acts or isolated incidents are insufficient." *Id.* at *4. The requisite causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to

correct the alleged deprivation, and he fails to do so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation omitted). "Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation and citation omitted).

Under certain limited circumstances, a municipality's failure to "train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). That being said, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). With regard to a failure to train claim, "a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the [officers] come into contact.'" *Keith v. DeKalb County*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). As such, a plaintiff asserting a failure to train claim "must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with

that knowledge the supervisor chose to retain that training program." *Id*. (quoting *Connick v. Thompson*, 563 U.S. at 61).

Plaintiff claims that her constitutional rights were violated through a custom or policy of the Sheriff – namely, his failure to adequately train deputies on how to perform physical takedowns of handcuffed detainees. To support her claim, she points to six incidents that she believes demonstrate a pattern of incidents in which handcuffed detainees were injured during takedowns, and she argues that the Sheriff had knowledge or should have had knowledge of these incidents based on certain reports he received.

The Court has very carefully reviewed the details of these incidents and the reports. A significant amount of time was devoted to exploration of this issue during the hearing on this motion. There is no evidence that the Sheriff reviewed these reports and had actual notice of the incidents. Moreover, based on the nature of these reports, the Sheriff could not have constructive notice of similar constitutional violations. The reports identify incidents where force was used, but they do not sufficiently describe the nature of the incident underlying the use of force – it is not clear from looking at these reports that the incidents of force were related to handcuffed detainees. Moreover, having heard details about these incidents, the Court concludes that these six incidents are not sufficiently similar to the violation at issue here and cannot have put the Sheriff on notice that specific training was necessary to avoid the alleged constitutional violation. The Sheriff's motion for summary judgment is granted as to this ground.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant's, Bob Gualtieri, as Sheriff of Pinellas County, in his Official Capacity, Motion for Final Summary Judgment" (Doc. 97) is hereby **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that summary judgment shall be entered in favor of Defendant, and against Plaintiff, on Count V of the second amended complaint. The Court will enter a final judgment once all claims have been resolved. The motion is otherwise denied.

(2) "Plaintiff's Motion for Summary Judgment on Count One of Her Second Amended Complaint" (Doc. 101) is hereby **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 3rd day of June, 2021.

                                  **TOM BARBER**
                                  **UNITED STATES DISTRICT JUDGE**